UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SHONDA VALENTINE,<br><br>              Plaintiff,<br><br>       v.<br><br>THE TOWERS CONDOMINIUM ASSOCIATION,<br><br>              Defendant. | Case No. 22-cv-3216 (JMC) |

## MEMORANDUM OPINION

Plaintiff Shonda Valentine sues her former employer, Defendant Towers Condominium Association (TCA), alleging she was wrongfully terminated via constructive discharge brought about by disability and racial discrimination in violation of the D.C. Human Rights Act (DCHRA), federal law, and public policy. ECF 1. The TCA now moves to dismiss for failure to state a claim, arguing that some of Plaintiff's claims are time barred, others are not exhausted, and all of them fail regardless because she does not plead sufficient facts to establish constructive discharge. ECF 5-1. Plaintiff opposes, ECF 6, but the Court finds that her claims must be dismissed. To the extent Plaintiff intends to bring DCHRA claims, they are time-barred. As for the remaining claims, the Court agrees with Defendant that Plaintiff's allegations, even taken as true, do not plausibly show that Defendant intentionally subjected Plaintiff to discriminatory working conditions so "intolerable" that her only reasonable choice was to resign. As such, the Court will **GRANT** the TCA's motion to dismiss for failure to state a claim.[1]

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

I.     BACKGROUND

The Court gleans the following facts from Plaintiff's complaint and Equal Employment Opportunity Commission (EEOC) charge, which is referenced in the complaint and attached as an exhibit to her opposition to Defendant's motion to dismiss. In February 2020, the TCA hired Valentine—an African American woman with a cognitive disability and anxiety disorder—as a part-time liaison to assist with Defendant's ongoing construction project in the Cathedral Heights neighborhood in Washington, D.C. ECF 1 ¶¶ 5, 7–8; ECF 6-1 at 5. The liaison position required Valentine to assess and report on contractual obligations, construction specifications, and safety issues relating to the project, and to serve as a point of communication and coordinator between the TCA, its residents, and contractors. ECF 1 ¶¶ 6, 9. On March 27, 2021, Valentine began reporting directly to TCA Vice President Sandy Kolb. *Id.* ¶ 10. About one month later, the TCA hired a new Director of Operations to whom Plaintiff would report, but Kolb still supervised Plaintiff's actions both directly and indirectly. *Id.* ¶¶ 11–12.

Valentine makes several allegations, which the Court must take as true at this stage, that Kolb mistreated Plaintiff during her time at the TCA. Valentine "reported safety, contract, and regulatory concerns" to Kolb, but Kolb ignored or dismissed these reports. *Id.* ¶ 13. Kolb allegedly "increased her abuse" the more that Valentine reported such issues, telling Valentine that she "did not know what she was talking about," interrupting her while she was speaking, and "question[ing] her mental capability." *Id.* ¶¶ 13–14. At one point, Kolb stated that she trusted the opinions of two White male contractors over Valentine's. *Id.* ¶ 13. Furthermore, Kolb "allow[ed] Plaintiff to be verbally abused by other employees and residents" by "refus[ing] to act" on harassment, including an incident during which a condominium resident made "racially charged commentary" about "slavery and plantations" in Plaintiff's presence. *Id.* ¶¶ 14, 33.

While Valentine was still working part-time in May 2021, management asked her to "create a position description for a newly created Contracts Administrator position." ECF 6-1 at 6. One month later, Kolb (who was then serving as TCA President) selected Valentine for this new, full-time role. *Id.* But Plaintiff remained frustrated by Kolb's "questioning [of] her mental stability, temperament, and qualifications, all while refusing to address Plaintiff's concerns," ECF 1 ¶ 14, which "hindered [her] ability to effectively fulfill the duties of the role," *see* ECF 6-1 at 6. On or about August 26, 2021, "[f]eeling she had no other choice," Valentine resigned. ECF 1 ¶ 15; ECF 6-2 at 1.[2] In her exit interview, Plaintiff "was informed" that Defendant "did not trust Plaintiff's opinions or reports" and "had concerns about her mental capabilities because Plaintiff was in therapy." ECF 1 ¶ 16.

Plaintiff filed a charge of discrimination on June 14, 2022, received a right to sue letter on July 27, 2022, and filed suit in this Court on October 20, 2022. ECF 1 ¶¶ 17–18. Defendant moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), ECF 5, and Plaintiff filed an opposition to that motion, ECF 6. Having considered the Parties' arguments, the Court is now prepared to rule on the motion.

## II.    LEGAL STANDARD

For a Rule 12(b)(6) motion for failure to state a claim, the Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "must accept as true all of the allegations contained in a complaint," but need not do the same for legal conclusions

---

[2] The Court notes that there is a one-day discrepancy between Plaintiff's complaint and her EEOC forms as to when she resigned. *Compare* ECF 1 ¶ 15 ("Plaintiff resigned . . . on or about August 25, 2021"), *with* ECF 6-2 at 1 ("I resigned on 08/26/2021."), *and* ECF 6-1 at 3 (listing "Date of Incident" as August 26, 2021). For the purpose of this motion, the Court will grant Plaintiff the benefit of the later resignation date when assessing the timeliness of her DCHRA claims even though, as laid out *infra*, this one-day difference is inconsequential.

3

or naked assertions of wrongdoing devoid of supporting facts. *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). In ruling on a 12(b)(6) motion, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Such a motion may also raise affirmative defenses, including untimeliness or failure to exhaust administrative remedies. *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998).

**III.    ANALYSIS**

Plaintiff's claims must be dismissed. Defendant presents various arguments as to why Plaintiff has failed to state a claim upon which relief can be granted, but for purposes of resolving this motion the Court will address just two core deficiencies of the complaint.

First, Plaintiff's claims under the DCHRA are untimely. Under D.C. law, an aggrieved employee must file their complaint "within one year of the unlawful discriminatory act, or the discovery thereof." D.C. Code § 2-1403.16(a). When an employee files a charge with the EEOC, this "suffices to toll the one-year statute of limitations," *Craig v. District of Columbia*, 74 F. Supp. 3d 349, 366 (D.D.C. 2014), but the tolling period "end[s] when the EEOC issue[s] its right to sue notice," *Hammel v. Marsh USA Inc.*, 79 F. Supp. 3d 234, 241 (D.D.C. 2015). Here, the only "unlawful discriminatory act" alleged by Plaintiff is "constructive[] discharge[] by the Defendant due to Plaintiff's disability" and "due to Plaintiff's race." ECF 1 ¶¶ 22, 30. Thus, the statute of limitations started running when Plaintiff resigned on August 26, 2021. According to the timeline as Plaintiff views it, *see* ECF 6 at 3–4, she filed her EEOC charge on June 14, 2022 (i.e., 292 days later), ECF 1 ¶ 17. This tolled her deadline to file suit, but the clock started ticking once again when she received her right to sue letter on July 27, 2022. ECF 1 ¶ 18. On that date, Valentine had

4

73 days remaining to file suit in this Court, meaning her complaint deadline was October 10, 2022.[3] She then missed this deadline by 10 days by filing suit on October 20, 2022. Valentine offers no basis for this Court to excuse her untimeliness, and so her DCHRA claims must be dismissed.

Second, Plaintiff fails to allege constructive discharge, which is fatal to each of her remaining claims of disparate treatment discrimination and wrongful termination. Under current caselaw, Valentine must plausibly plead that she "suffered an adverse employment action" to proceed with her discrimination claims. *Adeyemi v District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008); *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). And to proceed with her wrongful termination claim, she must plausibly plead that she was in fact terminated by her employer. *Cf. Lockhart v. Coastal Int'l Sec., Inc.*, 5 F. Supp. 3d 101, 105–06 (D.D.C. 2013). To meet those requirements, Plaintiff relies solely on her resignation, which she characterizes as an involuntary "constructive discharge." *See* ECF 1 ¶¶ 15, 22, 30, 39. In theory, a constructive discharge could satisfy these necessary threshold elements, *Aliotta v. Barr*, 614 F.3d 556, 566 (D.C. Cir. 2010), but simply invoking the words "constructive discharge," without more, will not carry an otherwise insufficient complaint over the line of plausibility, *see Iqbal*, 556 U.S. at 678.

To prove constructive discharge, a plaintiff must show that their employer (1) intentionally discriminated against them, and (2) in doing so, deliberately made working conditions so objectively intolerable that a reasonable person would feel compelled to resign. *See Clark v. Marsh*, 665 F.2d 1168, 1173 (D.C. Cir. 1981). The doctrine demands a "further showing" beyond that of a hostile work environment claim, *Penn. State Police v. Suders*, 542 U.S. 129, 134 (2004), which itself already calls for proof of "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

---

[3] The Court recognizes that 73 days after July 27, 2022, would be October 8, 2022. But that was a Saturday, so Plaintiff's deadline to file was the following Monday, October 10, 2022. *See* Fed. R. Civ. P. 6(a)(1).

abusive working environment,'" *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). For constructive discharge then, there must be "discrimination *and* the existence of certain 'aggravating factors' . . . that, by making the workplace so disagreeable, prevent the reasonable employee from seeking remediation on the job." *Veitch v. England*, 471 F.3d 124, 130 (D.C. Cir. 2006). After all, "[r]esignations or retirements are presumed to be voluntary," *Aliotta*, 614 F.3d at 566, and society, law, and policy are believed to be "best served if, wherever possible, unlawful discrimination is attacked within the context of existing employment relationships," *Clark*, 665 F.2d at 1173. As such, "[t]he kinds of situations where courts have upheld constructive-discharge findings tend to involve extreme mistreatment or thinly veiled (or even overt) threats of termination" indicative of a deliberate effort to drive the employee out. *Robinson v. Ergo Sols, LLC*, 85 F. Supp. 3d 275, 283 (D.D.C. 2015).

Looking underneath Plaintiff's repeated assertion that she was subject to "constructive discharge," the Court finds that the factual allegations of her complaint cannot bear the weight of such a hefty label. The complaint does not describe mistreatment that courts have found so objectively intolerable that a "reasonable person in [her] position would have felt compelled to resign." *Aliotta*, 614 F.3d at 566. To be sure, the Court acknowledges that Valentine's non-conclusory factual assertions—few in number as they may be—do paint a picture of an unpleasant work environment in which her employer dismissed her safety reports, interrupted her when speaking, questioned her mental capabilities, and devalued her opinions. Of particular concern are Valentine's allegations that the TCA refused to respond to "harassment reports" and failed to address two instances of "racially charged commentary." ECF 1 ¶¶ 14, 33. Nonetheless, her scarce descriptions of specific misconduct do not reflect the degree of extreme mistreatment required to plausibly show that the TCA "deliberately made working conditions intolerable and drove [her]

into an involuntary quit." *Clark*, 665 F.2d at 1173. Valentine does not allege, for example, that the TCA threatened her with termination, *cf. Ross v. U.S. Capitol Police*, 195 F. Supp. 3d 180, 203–204 (D.D.C. 2016), that it deliberately exacerbated her disability by refusing to provide accommodations, *cf. Floyd v. Lee*, 968 F. Supp. 2d 308, 330 (D.D.C. 2013), that it denied her a promotion or any other tangible benefit in a manner that caused "predictable humiliation and loss of prestige," *cf. Clark*, 665 F.2d at 1175–76, or any other factors that courts have found sufficiently aggravating to support a constructive discharge claim. To the contrary, after Valentine had worked under her allegedly abusive supervisor for three months, that same supervisor offered Valentine a promotion from part-time to full-time work (only for Valentine to resign two months later). ECF 6-1 at 6; *see* ECF 1 ¶ 15. At bottom, Valentine has not alleged a single aggravating factor that would transform her resignation—which is presumed voluntary—into a constructive discharge, so her remaining claims must be dismissed.[4]

## IV.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for failure to state a claim, ECF 5, is **GRANTED**, and Plaintiff's complaint is **DISMISSED**. A separate order accompanies this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: March 26, 2024

---

[4] To be clear, the Court need not and does not address whether Valentine has alleged sufficient facts to bring a hostile work environment claim because she has not brought such a claim in the first place. Moreover, whether Valentine could proceed with a hypothetical hostile work environment claim has no bearing on the Court's conclusion that she has failed to allege constructive discharge. *See Sims v. Sunovion Pharms., Inc.*, No. 17-cv-2519 (CKK), 2019 WL 690343, at *11–12 (D.D.C. Feb. 19, 2019) (dismissing constructive discharge claim but not hostile work environment claim); *see also Robinson*, 85 F. Supp. 3d at 282–84 (dismissing constructive discharge claim but not retaliation claim).